and we'll start off, I guess you have an introduction to make, Mr. Korsen. We'll hear from you. Yes, please. Thank you. So may it please the court, Judge Niemeyer, Judge Nguyen, Judge Richardson. I'm John Korsen with the Wake Forest Appellate Clinic. And under Local Rule 46A, it's my pleasure to introduce the two third year soon to be graduate students who will be arguing. Thank you for allowing us to tag team on these issues. We wouldn't do this if they weren't fairly distinct issues. But again, back to my introduction, Henna Shaw, Mackenzie Herman will address the first issue in our brief of judicial coercion. And Henna Shaw will address the second issue about the prosecutor's rebuttal closing arguments. I'll do the third issue of the appellate delay. Thank you. OK, then we'll hear first. Actually, the students ought to recognize that there is a tradition at Wake Forest to win many of these cases. I recall several successes. That's no pressure on you. You take the case as you get it. You do your best. You're advocates. So we'll hear first from Ms. Herman. Good afternoon, and may it please the court. Mackenzie Herman on behalf of petitioner appellate Mr. Charles Fleming. Criminal defendants are entitled to an uncoerced jury verdict, as stated by the Supreme Court in Lowenfield, and whether a supplemental charge is coercive is dependent on the circumstances, as stated by the Supreme Court in Jenkins. This court's decision in Tucker v. Cato outlined a number of factors that show judicial coercion. And while each and every one of these factors has been satisfied here, there are two in particular that indicate that there has been judicial coercion and the initial conviction should be reversed. One, the supplemental charge in its entirety and context was coercive. And two, the supplemental charge was unbalanced and that it contained suggestions or commands that the jury must agree. Now, before I get into the first point, I briefly want to outline that the correct standard of review here is de novo. And Professor Korsen will discuss the merits of that argument. Now, beginning with context, this supplemental charge did not exist in a vacuum. In other words, that we have to look beyond the supplemental charge when determining whether the trial court was coercive. And when we look at the totality of the evidence here, we see that the trial court judge, Judge Ferguson, set an arbitrary deadline of two days to end the trial by Friday. And he reminded the jurors about this deadline at least five times. That is, before, during, and after Wadsworth. And while he was advised to expand the jury pool, he simply refused to do so. And even the prosecutor said it was, quote, risky not to expand the jury pool. He said, I think the panel ought to be enlarged on page 1630 of the record, asked if the case would go into Friday hesitantly on page 1604 of the record. And also asked if the court would reconsider bringing in extra people on page 1631. So this arbitrary deadline was not simply a guideline that was in the back of the juror's mind. This was something that the trial court judge constantly reiterated to the jury and even threatened the jurors with. If you look on page 1982 of the joint appendix, you'll see that the judge stated he would hate to put the jurors in jail. And these threats are improper under Tucker. Tucker factors too, to be precise. Yes, Your Honor. Can I interrupt you? I understand your colleague. I'm trying to keep your divisions correct. Mr. Korsen will address the standard review. But particularly when you talk about what you call a threat to putting them in jail, under 2254E1, the Supreme Court here found that that was a comment made in jest. And so we're required to give that factual finding under E1 deference, even if it wasn't decided on the merits. That's a factual finding. And so what I'm having a little trouble understanding is you have a different interpretation of that statement than others, but I just want to use that as an example. Why don't I give deference to that under 2254E1? Well, Your Honor, the answer is that we disagree that this has been an adjudication on the merits by the West Virginia Supreme Court of Appeals. Even if it's not an adjudication on the merits under E1, we still are required, independently, to give deference to factual findings made by the state court. And the state court here found that the comment of putting him in jail overnight was made in jest. It was not a threat. And so what, I mean, I understand you might disagree with that, but why under E1 don't I have to defer to the West Virginia Supreme Court on that factual issue? Because ultimately that, you'll see under Daniels v. Lee that, Your Honor, ultimately they did not actually talk about findings on page six of that decision. You'll see on, in that paragraph, they merely summarize the arguments of the state and Plano regarding judicial coercion. They don't actually reach findings as opposed to the issue of appellate delay. You'll see later in the case, they do make the findings, as you can see by the statement, quote, we agree with regards to a trial error. But ultimately they never did reach the adjudication on the merits of this issue. And even if this is a threat, even if we do give deference to the West Virginia Supreme Court of Appeals, Your Honor, this is just one of the many factors of the Tucker test. And we succeed on the remaining Tucker factors, Your Honor. So no matter which way that we look at this, ultimately Plano has a very, very strong case because these Tucker factors have been satisfied here, Your Honor. So ultimately, this was not a guideline in the back of the juror's mind. This was something that they kept hearing over and over. And this arbitrary deadline, along with this threat, set the stage for the trial. And the jurors were keenly aware of the entire time of the judge's anxiety. Your argument, it seems to me, could break down into a couple of components. Judges have a lot of discretion in managing trials. And as a matter of fact, over the years, judges have said, we're only going to take three days to try this case. We're going to take one week to try this case. And you guys got to finish. In this case, the judge did say everything you said, but it doesn't seem like anybody was denied putting on witnesses. So by the middle of the day on Thursday, the case was over in terms of putting in the evidence, cross-examining, and closing arguments. The question then becomes the second component is whether the jury was forced or coerced into reaching a verdict between the middle of the day and the end of that day. And when you focus on that part, one thing that seems to me you may want to address is the jury was explicitly instructed to go back and answer the question whether they thought further deliberations would assist them, not whether they could reach a verdict. How do you respond to that? That seemed to give the jury quite a bit of latitude and tell them they could say our deliberations are meaningless and the court was prepared, as we know, to issue a mistrial. But it seems to me there was a pressure context when they finished the trial, but I'm not sure the jury were actually told they had to reach a verdict. Now, there was, I grant you the suggestion that they would stay later that day, which is not a good thing. Obviously, unless somebody objected, then it would be a terrible thing. But there was this conversation where the judge was carrying on a dialogue with the jury and said, I'd like to hear from the jury as to whether further deliberations would be useful. And they went back to consider that question. And rather than enter that question, they returned a verdict. Yes, Your Honor. So essentially, when the jury came back out after three hours of deliberation, the judge asked before a person if further deliberations would be helpful, to which Angela Adams said no. And then he asked again for a show of hands. Only three replied in the affirmative. And at the point, the judge knew the division of the jury was 642. And he immediately gave his supplemental charge saying, just don't say anything. And immediately after that, they went back to discuss your honor. They came out 44 minutes later after three hours of discussion with a verdict. So ultimately, the whole situation indicates that the jurors were very solid in their position and that this charge did have something to do with coming to an agreement. Ultimately, they did not think they were going to agree with further deliberations. And I see that I am running out of time, Your Honor. So I briefly want to touch on my second point, that this charge did not contain the necessary language of failing to remind jurors not to commit their conscientious conviction, which is complete a failure under Lowenfield and Jenkins. Thank you, Your Honor. Thank you. All right. On your side, we'll still hear from Ms. Shaw next. Is that correct? Yes, Your Honor. Thank you. We'll hear from you. Good afternoon, and may it please the court. Kenna Shaw on behalf of Petitioner Appellant Charles Climail. I will be addressing two points, both based on the prosecutor's closing argument. First, that Climail's due process was violated by the prosecutor's send-a-message argument. And second, Climail's post-Miranda right to remain silent was violated when a prosecutor committed a Doyle error. Turning to the first point, Climail's due process was violated because the prosecutor gave an improper closing rebuttal argument that urged jurors to protect the community and send a message. In the closing argument, the prosecutor urged the jury to serve a larger social objective and seek broader social approval through its verdict. This goes beyond the role of a jury, as a jury's task is to determine whether the defendant was guilty or not guilty. This court has ruled in United States v. Runyon and United States v. Pueblo that a prosecutor's closing argument is improper if it encourages the jury to send a message to the community because it invites the jury to use its decision to not just punish the defendant, but to serve a larger social objective or to seek a broader social approval. Here, the prosecutor's argument was misleading and prejudicial because it repeatedly contained improper remarks about sending a message to the community. It's the jury's role to decide the facts of a particular case and render a judgment for the case at hand. It's not to play the larger role of society. As well, this court has created a six-factor test as articulated in United States v. Wilson to determine whether a prosecutor's improper remarks require reversal. As to the improper send-a-message issue, the district court erred in its judgment as to the second and fifth factors. For the second factor, whether the remarks were isolated or extensive, prosecutors' remarks were extensive and not isolated. The prosecutor asked the jury to protect the community and send a message early in the argument, as seen on page 1975 of the joint appendix, midway through the closing rebuttal, as seen on page 1979, and again at the end, as seen on page 1981. The prosecutor's send-a-message argument was frequent throughout and became the theme of this closing argument, making it extensive. It was not just one offhand statement. It happened at the beginning, middle, and end, and was frequent throughout. As well, as to the fifth factor, whether the remarks were invited by defense counsel, defense counsel had twice stated that rape is easy to allege but difficult to defend. But this is very different from the prosecutor's repeated argument that the jury needed to send a message to protect the community. The prosecutor's send-a-message argument was not made in direct response to defense counsel's argument regarding the same issue. Defense statements that rape is easy to allege but difficult to defend is very different from a send-a-message argument. All the prosecutor needed to do to rebut this easy-to-charge aspect of Plano's counsel rebuttal was to simply talk about the burden of proof. And he does that, as can be seen in the joint appendix on page 1976. Since the prosecutor's argument was improper by urging jurors to protect the community and send a message, and the factorial test shows that Plano's due process was clearly violated, this constitutes a reversible error. Turning to the second point, the prosecutor committed a Doyle error when he took advantage of Plano's post-Miranda right to remain silent. This court has noted that because the nature of a Doyle error is so egregious and so inherently prejudicial, reversal is the norm rather than the exception. As ruled by the U.S. Supreme Court in 1986 by Wainwright v. Greenfield, Doyle and subsequent cases have made clear that breaching the implied assurance of Miranda warnings is an affront to the fundamental fairness and due process clause required. As well, this case made it clear that a Doyle error can occur in a prosecutor's closing argument. The prosecutor's argument took advantage of Plano's post-Miranda silence, which applied because the police had given him Miranda warnings. Moreover, because the prosecutor commented on Plano's post-Miranda silence, he committed a Doyle error. This can be seen in his remarks in the joint appendix on page 1977. And I quote the saying, quote, that statement that he gave the police was three hours. That he gave to the police was written out was three hours later. Do you know there was uniformed policemen in this apartment arresting him three hours before and there is nothing in the record that shows a statement was made to the uniformed policemen and that the uniformed policeman was subpoenaed by the defendant waiting in the waiting room and he was never called? Three hours to make up the story. This is what the prosecutor said when he created a Doyle error. It wasn't simply that Plano's post-Miranda silence was merely mentioned, but the prosecutor makes inferences that Plano's silence could have given him enough time to make up a story. This is a clear violation. As well, Plano's written statement was key evidence and the prosecutor was making use of it to blunt Plano's main evidence as can be seen in the joint appendix on page 1902. As well, using this court's six-factor test, the district court erred in its judgment as to the second factor. The second factor of whether the remarks were isolated or extensive. The prosecutor's remarks were extensive and not isolated. The district court's cryptic conclusion that the remarks were isolated because they comprised only two short paragraphs of the trial transcript failed to examine the remarks in context. The prosecutor's remarks were made not as a passing reference. As well, the argument that the Doyle error only consists of two paragraphs of a 450-page transcript is misguided. Counsel does not talk or guide the argument for the full 450 pages. In fact, parts of trial like direct examination, cross-examination are guided by the jury and witnesses. In reality, prosecutor's argument was two paragraphs of a seven-page closing argument which makes it extensive and not isolated. The prosecutor's remarks also... I don't want to interrupt you and take you back, but I'm going to do it anyway. Back to the send-a-message comments. Can you respond to the argument that they were effectively invited error? Or in other words, they were responsive to the defense counsel's arguments that were being made? Yes, Your Honor. This was not invited error. The defense counsel did not invite these remarks. For example, when Primal's attorney said, this is dangerous, gentlemen, this did not invite a send-a-message argument from the prosecution. Rather, it invited the prosecutor to discuss why it was dangerous to men only. And the prosecutor did respond to that. He said, this is an error of women. As well, the prosecutor's argument of sending a message... In these types of cases, those are sort of the two, you might say, underlying or two of the underlying themes that exist, right? And so neither of them probably appropriate. But once the defense counsel raises the, man, you better be worried. If you convict here, you're going to be next, argument. Then, doesn't that open the door, at least in a prejudice type analysis, when we consider the sort of responsive argument, which is, you know, you should worry about all women. If you're going to worry about all men, you ought to worry about all women. Those are the two sides of that story. No, Your Honor. This does not open up the door to having a, you have to worry about all men, you must have to worry about all women type of argument. Here, the prosecutor, ineffectively, did respond. He devoted a paragraph of his closing statement saying, you know, this is an error of the modern woman. He responded to that one thing. But the thing is, he went on for the entire closing statement to make this a theme. Instead, what he should have done is that he needed to rebut the easy to charge aspect of primal counsel rebuttal. And the prosecution, by doing that, he should have raised the standard of beyond a reasonable doubt, and he does on page 1976. Instead of tapping it there, he had made this argument throughout the beginning, middle, and end, which makes it more of a theme and less of an invited response. As well, turning back to the second issue on the Doyle error, the prosecutor's remarks attack primal's most important exhibit, his written statement of what occurred in his apartment. The trial judge had previously acknowledged how important the exhibit was, and primal's counsel had focused on that exhibit in his closing. This case came down to the accuser's credibility, and her version of what occurred in the apartment was countered by primal's written statement that the prosecutor impugned it in his use of primal's post-Miranda silence. This court should find that the prosecutor's closing argument was improper because a Doyle error was committed. As reversing Doyle error is the norm and not the exception, the court should reverse. Thank you. Thank you, Ms. Shaw. Mr. Corson? Yes, thank you, Your Honor. May it please the court, Judge Niemeyer, Judge Wynn, Judge Richardson. On the appellate delay issue, I'd like to make two main points. First is that the West Virginia Supreme Court's decision is not entitled to deference because it was based on a materially incomplete record. And secondly, in the alternative, even if the record was materially complete, the decision was objectively unreasonable. So I have two alternative points. On the materially incomplete record, the record was materially incomplete because it was lacking evidence from the important years of 1994 through 1997, the important early years of the appellate period. And collectively, what's missing from the record before the West Virginia Supreme Court shows that the first appellate attorney committed several ethical violations. The trial judge took many months to appoint a second appellate attorney, finally doing so after a writ of mandamus from the West Virginia Supreme Court. Then the trial judge and the prosecutor entered two improper ex parte orders that frustrated Plimell's right to appeal. And then his second appellate attorney basically abandoned him, stopped communicating, left the public defender's office without telling him. And this covers the period of 1994 to 1997. I hate to do this, but I'm going to do it again. No, please do. I get the facts, and I understand. But hypothetically, assume that I agree with you that this was a due process violation, that taking 20 years to decide an appeal is a due process violation. For you to get relief under 2254, your client must be in detention as a result of that violation. And so what I'm having trouble seeing is that even if there's a constitutional violation, now that the West Virginia Supreme Court has decided it, we talk about in Johnson, it's sort of a mootness type analysis. But given that the appeal has been decided, I don't understand why your client can argue that the delay is the reason under 2254A that he's in custody and thus entitled to habeas relief. Certainly, Your Honor. And so the sort of remedy relief question is obviously a valid one and an important one. To answer it first, I'd like to say when he filed this federal habeas petition back in 2014, he was still incarcerated. In fact, it took another almost two years for the West Virginia Supreme Court to decide his case. And that may well excuse exhaustion in some other context. I understand that. But what that doesn't tell me is why he's in detention as a result of the due process violation. Oh, I see what you're saying, Your Honor. Well, again, when he filed this federal petition, he had not even had his direct appeal decided. And so he cited the numerous cases in the lower court that after a certain period, he saw a writ of unconditional release due to the appellate delay. And there's some authority for that. I do not have it in front of me. So the theory was this delay has gone on so long, is so extraordinary, he's entitled to a writ of release. So that was that was the theory when he filed. That's what I'm having trouble with. So the courts and there are lots of courts that talk about there being a due process violation. Athena Cody versus Johnson out of the Second Circuit is an example. Our decision in Johnson, which is an appellate issue, is the same one. There can be a due process violation, right? But the due process violation doesn't result in the illegal confinement. There has to be an issue on appeal that would have prevailed in order for the due process violation to result in his confinement. And that's what I'm having trouble with. And then that goes back to your colleague's argument. I understand that. What I'm trying to figure out is, is the appellate delay issue an independent issue at all? Even if it's a due process violation, I don't see how that's the reason for his detention as required to get released. Well, we contend that it is, Your Honor. And I'll get back to that in a second. But certainly, my colleagues, as you say, we contend that either or both of those issues are reversible error. So if that's the case, it's sort of a separate point whether it needs to be a standalone claim. But again, at the time of filing, the delay had been well over 19 years. And his theory was, I'm entitled to unconditional release because it's gone on so long. Now, First Behalf has a decision. And so now circumstances have changed to that extent. And again, I argue both that it was based on a materially incomplete record and also that it was objectively unreasonable alternative. What relief would you want right now? Yes, Your Honor. So both sides cross moves for summary judgment. And the court agreed with responding. So we would like that reversed, that in fact the certificate of appealability was due process violated due to appellate delay. I understand. But let's assume we go through this habeas process and conclude there was a due process violation that should not have occurred. Reverse inclusion. What's the relief you get? So I believe traditionally habeas traditionally addresses custody. Yes, Your Honor. Would you want the man? Is he still in prison? I believe he was released earlier in 2021, Your Honor. Finally, in this year in 2021. Yeah. Correct. Okay. But what let's assume he's still in prison just to carry out the argument. What relief would we give him? Well, that could be released if he were if that could be released. Why could it be released? Because the appeal can go one of two ways. He can win and lose. If he wins on the appeal, he gets a new trial. If he loses on appeal, that ends it. Now, in this case, it ended it. But in either case, it doesn't release him from custody. This goes back to Judge Richardson's question, I suppose. It does, Your Honor. If I had a better answer, I would give it to you. I think it would be important for this court to recognize the violation that is bound to have collateral consequences, if perhaps. Also, this would be important precedent for courts going forward. And I think the precise exact relief as to where he is now in his life is probably a better develop on remand. I don't think here today we can come up with the best relief in what his life situation is right now. Let me ask the question because it's just puzzled me a bit. You just revealed to me that he is not in custody. And I wrote a dissent in U.S. versus Wilson that put those soldiers, those sailors down there that wouldn't give him relief on the sexual offense type situation where registration because they weren't in custody anymore. Even though everything showed they were innocent. Is there any tie? I mean, how do you give him his relief if he's not in custody? Help me out. I mean, it sounds like I should have prevailed in that case. So, Your Honor, my understanding is this does not move the case as long as he was in custody when the 2254 was filed, which was seven years ago. And he was in custody until very recently. We do not have a mootness issue. And I think relief on that. We don't have a mootness issue, maybe. But we have a substantive habeas issue. Habeas is intended to release from custody. Now, I suppose custody continues with supervised release. And maybe not. It depends on the state law. But it's... Well, it's troubling to me because I'm not sure Wilson was under some type of supervised supervision. I'm just... I mean, the first time it came up, it's the reason it didn't come to my head because it looked like he was still in custody. And I'm not saying it's an issue. But it sounds like to me that's up because this is habeas relief that you are seeking. And as Judge Niemeyer pointed out, how do you get habeas relief is not direct appeal in this instance because he is gone. I mean, what we do is refree you. But he's out. So, let me give you another... Again, I believe this is better explored on remand, Your Honor. Let's say Your Honors did agree on one of my... Oh, no. That would be a matter of law. We've got... I mean, we can't... I wish I could have sent it back on... Or Wilson said go back on remand to deal with it. But I'm just thinking... I'm just saying it may be a supplemental brief situation. But it seems like to me, unless someone knows the answer, it may be an obvious answer that comes out. But I thought it would leak from your lips to me and say, Judge, when you're completely out of the racket, you can't do this. Now, I've got the... If the answer is at the time you file it, you're in custody. But I don't think that follows. I think you've got to be in custody because I'm trying to think of the relief you give as Judge Nimoy. I don't want to muddle this thing, but I'm really puzzled about that right now because it's the first time I heard it. I did not know he was out. Right. Certainly, Your Honor. So, a couple of things with a minute or two of indulgence here. First, if you agree with my colleagues on either of those issues, then he would be subject to retrial. And one of the reliefs he has sought, I can't cite you joint appendix pages, is that due to the extraordinary delay that's gone by, the state should be barred from retrying him. So that's a potential collateral consequence, for example. But, again... Oh, and I don't know if the court wants to give me additional time to talk about the Barker factors. The Barker factors do not speak to the... Well, I'm still stuck on that one because I'm just trying to get Wilson off my head. Because everything you're telling me, Wilson had been actually found not to have done it. I mean, that was what... And it was a collateral thing that was being done to him. He was required to continue to register as a sex offender in another state. And the court has said he hasn't done it. So come to us for haven't relief. It says, no, he's not in custody. If he was in custody, then we could give him some relief. It didn't make any sense at all to me, but I was a dissenting opinion. So, you know, and I followed the law. I mean, you know, it's the way I would like it to be. But if it's not that way, I'm going to do exactly what I've been told the law is in the circuit until someone tells me different. So that's why I see it's important at least for somebody to come up with something. And maybe I guess you guys got a little time. Maybe if you can scour around and kill that point for me, I can get off of that. Because that would be in this case. Certainly. And thank you for making that concern explicit. I will say it sounds like your dissent in Wilson was correct. And maybe there's a way to... No, it wasn't. It didn't prevail. It may be the parole thing he's trying to get out of. I don't know. I'm just saying I just don't understand. But that's the first I heard he's out. That's the only reason I brought it up. I missed what you said, Judge Richardson. I think it's the difference between supervision and registration. That may be, Judge. And I agree with you. It could be that. But it was the issue was whether he was in custody and is supervision in custody. I may have answered that back then. I just don't remember it right now. You caught me off guard on that one. Well, I was asked about it and certainly didn't want to not point that out to the court. Again, the case has been ongoing for now over seven years. Would the court like to ask any other questions about the health delay issue? I didn't really get to my points, but they are in our briefs. I think we've got it. It's a complex factual record. It actually surprised me. 20 years is a long time on appeal. Anyway, I don't have any further questions on that. Judge Wynn, Judge Richardson. No, I'm fine. Thank you, Judge. Mr. Lantman. Thank you, Your Honors. May it please the court. Thomas Lantman on behalf of Respondent. The district court correctly rejected petitioner's claim that his due process rights were violated by the delay in adjudicating his appeal, and the district court correctly reviewed that claim under the deferential standard that AEDPA requires. The district court also correctly concluded that petitioner's other two claims did not have merit, although the district court should have reviewed those claims under the deferential standards set forth in AEDPA and indeed should have dismissed those claims as procedurally defaulted. Can you start where we ended? Do you agree that he is no longer physically in custody? And then second, can you tell us anything about whether he is under the degree of supervision required to be considered, quote unquote, in custody under the Supreme Court's Jones decision from the 1960s? Yes, Your Honor, although the facts aren't in the record, as has been explained to me at least, petitioner was released on supervised release, I believe several years ago, but is currently incarcerated again in connection with a separate offense. So he is in custody, but the custody relates, for purposes of this case, more to supervision than to confinement. Is the nature of his supervision analogous to the federal supervision, or what is it? I'm not aware of the specifics, Your Honor. I believe that he was subject to revocation for future offenses, and there was another offense that he allegedly convicted. Yes, Your Honor, but again, I don't have the record of this. Well, I know this is happening to all of us right now, and it's actually an important fact, I think, for us to consider. Yes, I would agree with that, Your Honor. I'm aware of, as Judge Richardson pointed out, that when there are elements of supervision still applicable to a person, they're still confined and can still seek habeas relief for that reason. The important point, I think, here to note is that, for purposes of appellate delay at least, petitioner is not confined because of the appellate delay. The West Virginia Supreme Court noted his appellate delay claim did not prejudice him. There was no merit to the underlying appeal that he sought to bring, and as a result, he has already received any relief he'd be entitled to because of that appellate delay. He's already received the appeal that he would ultimately have been entitled to. This court has already waived the exhaustion requirement for him to review the underlying merits of his claims. Beyond that, there's nothing in the Supreme Court's precedence that indicates that he is entitled to relief for no other reason than the adjudication of his appeal was delayed. Again, that does not cause him to be incarcerated. He is incarcerated subject to a valid conviction, a conviction that's been upheld on appeal. It's set forth in our briefs, Your Honor, our dispute with the factual characterizations of the Supreme Court of Appeals decision. So just to briefly address those, the facts are not factual records, not materially incomplete with respect to these concerns. The only documents that have been suggested as being omitted from the Supreme Court of Appeals record deal with a very short period of time in the mid-'90s. They don't speak to the vast majority of the time Petitioner was not pursuing his appeal. They don't speak to any of the times Petitioner was, under his own volition, not pursuing his appeal or was prevented from doing so by illness. It does not disrupt anything to do with the court's conclusion that that time was not chargeable to the state. Let me ask you, go back to a question that was brought up. Judge Richardson had alluded to the fact that the Supreme Court of West Virginia said something was in jest. Was that a finding, actually, by that court? Or was it just a comment by the court? Yes, Your Honor, that deals with the... Is it a finding? Is it a finding? Is it a finding by the court? And if it is, what's the evidence that supports that? Yes, Your Honor. That is a finding. That is a factual conclusion. That statement is not a mere recitation of something that was contained in the state's briefs. The court editorialized when it made that comment when it said these statements were clearly made in jest. There's no caveat on that sentence, and the respondent argues it's clear. But if you read the court's opinion, it's not a typical opinion. It looks like it goes from point to point. And on that particular point, it raised and summarized the arguments of counsel. And then I read by implication it accepted the state's position, but it never said so. And when it referred to that particular statement, as I recall, it was summarizing the state's argument. Now, I think implicit was that it accepted that argument, but maybe not so. That could be debatable. I don't know. I think that's Judge Wynn's question, isn't it? It surely is. I mean, it's clear they're just summarizing the state's argument at that point. I don't think they made a finding. Even if it made a finding, I have some questions as to how in the world do you make that based upon the cold record? Based on what's said there, if you read what it is, there's no joking in that. There's no one laughing on anything. Plus, I have a problem with a trial judge joking in a case like this anyway, but that's a whole different thing. But I get it. I'm not going to go back and try to sit in the place of the state judges. I was one of those myself. And I particularly don't want to go against them and say I'm going to take them for what they did, but I just don't see it there. I think the best we can say is they were summarizing the state's argument. I will accept that. But I don't think it was a finding. I would contrast the finding in that portion of the opinion, Your Honor, with other portions of the opinion. Again, specifically because it contained editorial language. Rather than saying respondent argues point A, respondent argues point B, respondent argues point C. It's set forth at the start, respondent has argued these statements are not prejudicial. And when, again, in characterizing that statement, the court did not say petitioner argues that this was clearly made in jest. But the court itself said these statements were clearly made in jest. Without any qualifying language. It was in a paragraph that's at least certainly started by summarizing the state's argument. But by that point in the paragraph, the court was putting its own assessment of the facts on how it characterized them. It's worth noting that with respect to that argument and with respect to the prosecutorial misconduct argument, the findings are not as clearly stated as you pointed out. In large part because the Supreme Court of Appeals ultimately held that both of those claims, judicial coercion and prosecutorial misconduct, were barred under a state procedural rule. Common rule that contemporaneous objection requirement. This court has recognized in Davis v. Albrooks, Daniels v. Lee, that enforcing, applying the plain air standard. Before you go too much further down the procedural default argument, I think it's a great argument. It's just not one you made beloved. You cited one sentence that does not at all make the argument. And so, I mean, why are we talking about an argument that you didn't make below? It might well be the right argument, right? But it's not the one you made below. This court has acknowledged in several cases that even when defense, an affirmative defense like procedural default, is not raised below, this court nonetheless has discretion to consider that defense and to rule based on that defense. I don't know where that is. There's direct law in this circuit that says the other way. You didn't make that. I mean, there's a recent case that just came out. U.S. v. Harris just came out and said that right on point, what Judge Richardson is saying. I think he's probably right. It is a great argument. You just didn't raise it. You didn't raise it because I didn't hear it from the other side, so I assumed it was just moved on and you seemed to not have brought it up very much and sort of come and pass in a reply. I don't think it's there. I think that when you, in my opinion, maybe you can get around U.S. v. Harris. Just to clarify, I'm not sure if the back case overruled Yeats v. Angleton or Anglin, because I believe in the Yeats case this court held that where a procedural default argument is not waived which was inadvertently forfeited, that the court has discretion to consider it on appeal. So back to that question for a second. Why would we recognize, we assume we've got some discretion. Tell me why in a case like this we would use our discretion to excuse your waiver. There are three factors I would point to, Your Honor. First would be the distinction between waiver versus forfeiture where the state, as in Yeats, where the state made the substance of the procedural default argument below but did not specifically articulate or specifically invoke procedural default. Let me just be clear. You didn't argue that either. You didn't argue this is an exception case? You didn't argue that. What you're saying now, you didn't argue this. In terms of the substance of procedural default, Your Honor, in ECF page 1189 in the state's second amended answer. All I'm saying is you didn't argue it was an exception case. It's just a thing to be there. But I would like to know how is this case different from U.S. versus Harris? We just handed that down. Again, all I can point to, Your Honor, is Yeats v. Englund, Royal v. Taylor, the comedy. I understand that, but then Harris must be wrong. You're trying to say Harris was wrong and we should do something about it? I mean, it's on point. Those cases aren't on point. It's right on point. Again, all I have for you, Your Honor, is the state's position that Yeats is more on point, that it would be incomplete, but Yeats held that the state. Can I get a pardon, Your Honor? Yeah, I want to go over that. So in Yeats, this court held that the court could consider procedural default, even though the state had not expressly raised the argument below. When the state both believed it had and the state had articulated the facts that would form the basis of a procedural default argument. In that case, and in this case, the failure to object below. Did you make that argument here procedurally that they couldn't make this argument? Yes, Your Honor. And in ECF 1189. What did you say? One of the state's motions. The state pointed out that the West Virginia Supreme Court held that because this claim was these issues were not objected to a trial. The West Virginia Supreme Court dismissed them on the plenary standard. The precise way that that procedural rule is enforced pursuant to Davis and Daniel. Well, that's just a factual argument. The question is, how did you get to the next step? What did you say? Subjectively, that said it should be under the default rule. The filing went on to argue that the disposition under the plenary standard was correct and that was handled in the correct way as a legal matter. Yes. Can I just ultimately, as your honor said, to throw you a bone? The distinction with Harris is that Harris is a federal habeas case where yeats relies upon federalism and comedy to give us the discretion to do it. When we're doing a state court, even where the state executive branch fails to do their job. That is that is an important distinction here. Your honor. But but but keep in mind that the argument articulated is for exceptional cases. You didn't argue that. So even if you get there, given us nothing to go with discretion on. And in terms of whether the. That the comedy concerns here do relate to the interest of the state court rather than the state as a party. Which alters alters the calculus from that standpoint would be an additional reason to exercise. Exercise discretion. Nonetheless, the fact that these matters were fully briefed below or were fully briefed before this court leaves the court with the ability to decide this issue. There's not a concern that. The issue is being addressed summarily, as was the case in Royal or in other cases where there cannot be a comprehensive. Adjudication on the on the issue. Nonetheless, the although the district court and the magistrate court noted that this was likely an appropriate way to handle the case and then declined to do so. The court did ultimately reject both the petitioner's claims under the DeNovo standard of review. We would argue that a deference under the under Edpa would have been appropriate here. Assuming that procedural default is waived, the comedy concerns necessary to enforce a state's procedural rules. And otherwise, informing the federal habeas jurisprudence are nonetheless present in the state court's disposition of these issues. Does it make a difference, counsel? And under that differential standard. Counsel, does it make a difference? Assume for our hypothetical that you failed to raise the issue below. However, the magistrate judge and the district court both addressed procedural default, even though you failed to do it. Those judges did. And so does that make a difference? Your failure to raise the issue, given that the judges both below address procedural default. Does that make a difference? For purposes of appellate review, Your Honor, it does. It does help. Again, one of the concerns underscoring the decisions in Yates and other previous cases was whether there's a sufficient record for this court to rule on. So the analysis of those courts does lend in favor of resolving the issue now. The district court declined to rule on procedural default, noting that they would rather rule on the merits than on the... Then let's be clear about it. If the district court did not address it, then it declined to address it, as you just said. That's not a basis. Because I understood Judge Richardson's question. If the district court did rely upon it and dismissed that provision, could we deal with it? You just candidly admitted it, and I think the record upholds it. They didn't address it. He didn't address it. Correct. As all the panelists said, it's not as positive, of course, as we were hoping. That's true, Your Honor. They didn't comment on it, but it wasn't part of the holding at all. It was a throwaway. They probably didn't comment on it, didn't make a hold of it, because you didn't raise it. There's no reason to bring it up. And there's only so much the court is going to do your job. I mean, we go out of our way trying to help the government in cases that sometimes much to my dismay, but, you know, there's a limit. You didn't even bring it outside. These judges were asking, oh, no, you didn't bring it up. You're not going to make a finding on something you didn't even bring up. And even to that point, didn't bring it up, I guess. To the basis of the state court, I'm sorry, the district court not considering default was not so much that it was not raised, but the court expressly noted that it was because it's improper to rule on procedural default or disfavored to rule on procedural default when procedural question turns on complex questions of state law and where the merits under federal law are straightforward and the case can be disposed of that way. It's a comedy principle that that does cut in favor of ruling on the merits. But nonetheless, the procedural question here under state law is fairly straightforward. Supreme Court of Appeals opinion. Nonetheless, we don't disagree with the council to change the subject and talk about the prosecutors, you know, send a message. Don't worry about your daughters when they go to college arguments and why you think that those were either proper, invited or non prejudicial, whatever you think the best argument you have for. Certainly, Your Honor. The best argument on that point would be USC Young, whether viewed under the deferential standard or conducting the NOVA review. In that case, the Supreme Court held that the context in which you view a prosecutor statements can determine the propriety and in particular the prejudice aspects of this inquiry and where a statement is made by a prosecutor that is in response to a statement made by a defense attorney in closing. Even a statement that would be considered improper in other contexts. It's not prejudicial because the jury understands the connection between those two statements rather than simply focusing on the content of the prosecutor's statement in isolation. So what we have here in this case, the defense counsel's closing made several references to what we could describe as broader societal concerns. Described the case as a dangerous case, invoked the inherent unreliability and the ease with which these accusations can be made in sexual assault cases. And articulated again to the jury that this is a dangerous case for these broader societal reasons. The points made by the prosecution were only made on rebuttal, were not in any way raised in the initial closing or any other point in the case. And proceeded through a factual statistics driven response to the points raised by defense counsel, culminating with broader societal statements similar to the broader societal statements made by defense counsel. That's exactly in U.S. v. Young. There was even the same type of language about telling the jury to do their job. The same sort of entreaty to think in a more societal focused way, focus on their role as a juror as a way of influencing society. Those same comments, again, when they're made in response, were not prejudicial because of that direct relationship. The other factors in U.S. v. Wilson, dealing with prejudice, turned heavily on that relationship. Setting aside the question of whether the statements were just improper on their own. But as to the other factors, whether these statements have a tendency to mislead or divert attention, again, there's a close relationship between, where there's a close relationship between the two statements. Those concerns are not as strong. It was a particularly difficult case. I mean, I've gone back and read through the case itself and the facts of it. This jury came back initially, 6-4-2, we don't know which way. Facts were pretty interesting on both sides of this and very, very involved type case. This prosecutor gives this very short argument. It was a short closing argument and a great part of it are these, send us a message. And it's not just send a message. It's pretty strong stuff. I mean, this is not just you send a little message to the community and stuff. Oh, he went there. And he went there in a way I hadn't seen. I don't know. I'm not sure I've ever heard Judge Richardson do that with his prosecuting cases. And I'm not saying that would be an example of how to do it, but I think he's a model of how to do it. And it just, it's pretty strong. I mean, he really goes there. And even if it's invited, there's no curative instruction by the court on this thing here. It's really troubling when you look at this and you look at the evidence. If it's a clear-cut, hard, strong evidence going just one way, but here you've got a case where there's a lot that's here. I mean, you've got this student that's at Marshall University and he meets another, I guess, lady, a student, and unfortunately they get in a consensual situation and then it goes bad. And then that's where the gray area, because it's a jury determination as to what actually happens. But it is, I mean, that's some strong evidence on both sides of this case. But that prosecutor's argument is pretty, you know, and that much I probably will assume. In West Virginia, he probably has some knowledge of who is here, I mean, and the community standards and that thing. It really pushed it. It looked to me it did a little bit more than just push it. It was pretty strong. How do you, are you painting a picture that, well, it wasn't all that bad. It was something they kind of invited because it said something about men, so now he can just go full Monty there. In a very short argument, by the way. It wasn't a long argument where it's embedded somewhere in it. It looks like to me that's the meat of his argument. The close relationship between the two statements is what I would point to, Your Honor. I would agree that it is a very strong statement. And that's being kind to him to say it's a strong one. I just don't want to go there and make a complete judgment on it, but I can use stronger language than strong on it, to be honest. It's, it's, it's, it's healthy. It's all I can say for a case of this type. And what I would point to, Your Honor, as a comparator would be the statements made by the prosecutors in U.S. v. Young, where the Supreme Court dedicated a large portion of its opinion to specifically deconstructing the many, many problems in those statements. You know, not to reinforce specifically how improper those statements were in isolation. But then the ultimate holding of that case was that they needed to be viewed in context. If they're invited, if they're proportional and the other factors that we discussed. So it's not it's not to minimize your concern in any way. It's a to acknowledge that that might that fact can be true, but that it doesn't warrant reverse. I don't want to overstate it, but it seems like to me, if a prosecutor is allowed to do this, you really don't need to talk about the facts very much. I mean, if you can take a case like this and run a short argument on this, you can get some good conviction. If you can get them to start looking toward their prejudices and then their local feeling, if you don't find this petitioner guilty, he's going to encourage these sadomasochistic people to run wild. And that's no evidence of that in the record. I mean, it's but I, you know, I'm bothered by let's put it that way. And I don't want to say I prejudged anything. I'm just saying I'm bothered by this point. And I'm not sure you are answering my concerns. So I'm inviting you to do so. It would be it would be a concern, certainly if there were if the closing focus heavily on these points. Again, the opening of the first part of the prosecution's closing statements, not in any way reference any of these points. I was very specifically focused on the facts of the case, weighing the credibility of the victim versus the other witnesses versus the defense versus the defense's case. Beyond that, the again, the proportion of these statements, intense as they may have been against weight against the other facts that were presented, the way to get those presented. And to get the close relationship between what defense counsel said and what the prosecution rebutted those statements with. That's what I want is weighing against that concern or is miliating against that concern. It's certainly true in another case where where these statements are made without any of those other factors that that would certainly create a problem. To briefly address the judicial coercion points again, this is a standard. Multi-part standard. One of the factors in particular I'd want to point to is how is it that a reasonable jury would have interpreted the statements made by the trial judge? The most forceful statement the judge made shortly before he sent the jury back in to see if they could reach a conclusion was to remember what I said earlier about pride and stubbornness. And if we're looking at a jury, even under Tucker, even a juror who's in the minority and who hears a charge not directed to the minority, but they nonetheless understand is referring to them. A juror who heard that would have known to think back. That would have reminded that juror that they had heard those words before. That instruction referred back to the initial instruction. How is that helping you? That the judge is telling them he's got a 6-4-2, he knows the numerical breakdown, and then he tells them, you know, he's already told them, we want you out of here. We've got people that have got to be gone tomorrow. And only three of the people said we can reach a verdict. He sends them back and tells them, now, don't be stubborn and don't be, you know, don't be so fixed. I'm only paraphrasing in terms of how you think about this. And it looks like it's directed to those in the minority. And I don't know which way it goes, but it looks like it's, I mean, how is that helping? I mean, isn't that one of the factors to be considered? It is, Your Honor. And I see my time has closed, but to briefly address that point, that phrase refers back to the language used in jury instruction six, which specifically directed jurors to not surrender their own convictions. That is the phrase that, in other opinions, has been held to be, if that language is missing, it can be seen as an inherently fatal flaw in the jury instruction. But that not only was that language used in the initial instructions to the jury, but it was then called back to the later instruction instruction described as problematic here. If there are other questions as to the elements of the closing address, Mr. Carson. Thank you, Your Honor. I'd like to make three points, one about procedural default, one about coercion, one about the send a message argument on procedural default. I'd really like to try to put a stake in that. Not only was the Harris case decided just a couple of months ago on that point, Harris to follow up on Judge Richardson's question. Harris was a federal case, but it relied on the royal case, which was 2254 out of Virginia. And even more importantly, is Wood v. Milliard. That's Supreme Court, and it's a 2254 out of Colorado. And in Wood v. Milliard, which we cited in our reply brief, the court there said language similar to what the state did in this case in district court was a waiver. In that case, the state had said they would not challenge, but they were not conceding a limitations defense. Well, here on pages one and two of our reply brief, we quoted the state, I think, Joint Appendix page 754, even stronger language that they were not raising a procedural bar. So that is just waived, and there's both Wood v. Milliard and not just Harris, but the royal case for that. In addition, the rules governing 2254 actions, which are freely available, they're on this court's webpage. The rules governing 2254 actions, Rule 5 talks about the answer, and it says you've got to put in your answer things that include exhaustion, procedural default, statute limitations, and non-retroactivity. Those things are supposed to be decided up front, not seven years later. And, in fact, the state here pursued exhaustion heavily. There was a prior appeal that this case decided in 2016. It was, again, briefed in district court through 2017. We've been down the exhaustion route exhaustively. The state shouldn't now get to bring up procedural default. Secondly, on coercion, I'd like to say a couple things on that. First, it was the factors actually threat or suggestion that the court would keep the jury until they reached unanimity. If you look at this court's factors, it doesn't even have to be a threat. It could also be a suggestion. Here, the jest, we again say a close reading of the opinion, that was not a finding. Clearly a summary of the state's argument, not any sort of finding. Therefore, what the court did find on coercion is that there was no plain error. And under Daniels, that's just not an adjudication of the merits. Judge Richardson's recent opinion in Valentino actually said it's whether there has been an adjudication on the merits is determined de novo by this court. So we would ask the court to disagree with the district court here that there was any sort of finding, disagree with the West Virginia court with any sort of finding. Finally, on send a message, this was not invited. I see I'm going to have to go over a little over time with the court's indulgence. Send a message was not invited. If you look at the defense counsel's closing, it was very long. It was very factual. Went into great detail on the facts. He started off by saying a man's liberty, a man's liberty to take the facts of this case. He made one passing reference out of a very long closing to this is dangerous. The prosecutor responded to that. As my colleague, Ms. Shaw said, the prosecutor said this is an era of modern women. That was enough of a response. But he then went very disproportionately, not all out of all proportion to keep talking about sending a message. Unless the court has questions. We thank you again for your indulgence on this three way split and for your time. Thank you very much. Thank you, Mr. Coors. And I know that your court appointed and I want to recognize that. That's very helpful. Very necessary. And it makes our system work. I also recognize the very good assistance that you had with the new lawyers, the new budding lawyers. We trust we'll see them again. And at that time, we'll have our custom back in place where we can come down and read counsel. I want to thank everybody, the state and the petitioner for their arguments. We can't reach you and shake your hands, but that is our custom and we do it abstractly here, so to speak. Thank you very much. And we'll adjourn court for the day. Dishonorable court stands adjourned until tomorrow morning. God save the United States and dishonorable court. Thank you.
judges: Paul V. Niemeyer, James A. Wynn Jr., Julius N. Richardson